UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

GEORGE and LAURA VITELA,       )
                               )
    Plaintiffs,               )
                               )
  v.                           )   Case No. 4:13-CV-747-JAR
                               )
INDYMAC MORTGAGE SERVICES,     )
A DIVISION OF ONEWEST BANK, FSB, )
                               )
    Defendant.                )
                               )

# MEMORANDUM AND ORDER

This matter is before the Court on Defendant IndyMac Mortgage Services, a Division of OneWest Bank, FSB's Motion for Partial Summary Judgment ("Motion for Partial Summary Judgement"; ECF No. 19).[1] In the Motion for Partial Summary Judgment, Defendant IndyMac Mortgage Services, a Division of OneWest Bank, FSB ("IndyMac") moves this Court to grant summary judgment in its favor on Plaintiffs' claims for violations of the Fair Debt Collection Practices Act ("FDCPA") (Count I); violation of the Fair Credit Reporting Act ("FCRA") (Count II); violation of a discharge injunction (Count III); violation of the Real Estate Settlement Procedures Act ("RESPA") (Count IV); violation of the Missouri Merchandizing Practices Act ("MMPA") (Count V); and intentional interference with credit expectancy (Count VIII).[2] IndyMac's Motion for Partial Summary Judgment is fully briefed and ready for disposition.

---

[1] A Supplemental Memorandum in Support of Defendant's Motion for Summary Judgment (ECF No. 28) was filed April 28, 2014. That Supplemental Memorandum provided an additional basis for summary judgment on Count VIII.

[2] IndyMac does not move for summary judgment on Plaintiffs' claims for unjust enrichment (Count VI) and breach of contract (Count VII).

## BACKGROUND[3]

On April 23, 2007, Plaintiffs secured a $191,700.00 loan (the "Loan") from Newcastle Mortgage Corp. and signed an adjustable rate note ("Note"). (Defendant IndyMac Mortgage Services, a Division of OneWest Bank, FSB's Statement of Uncontroverted Material Facts ("DSUMF"), ECF No. 21-1, ¶1). The Note was secured by a deed of trust ("Deed of Trust"), dated April 23, 2007, on real property located at 147 Mockingbird Lane, Ballwin, Missouri 63021 (the "Property"). (DSUMF, ¶7).

IndyMac began servicing the Loan on March 19, 2009. (DSUMF, ¶9). The Loan was not in default and the payments under the Note were current as of March 19, 2009. (DSUMF, ¶10). IndyMac stopped servicing the Loan on August 16, 2013, when servicing was transferred to Ocwen Loan Servicing, LLC ("Ocwen"). (DSUMF, ¶11).

Plaintiffs filed a Chapter 7 bankruptcy petition on November 17, 2009. (DSUMF, ¶13). Plaintiffs filed a Motion to Vacate Discharge on July 28, 2010, for purposes of reaffirming the debt evidenced by the Note and Deed of Trust. (DSUMF, ¶14). The bankruptcy court granted the Motion to Vacate Discharge on August 4, 2010. (DSUMF, ¶15). Plaintiffs signed a Reaffirmation Agreement on July 20, 2010. (DSUMF, ¶16). Plaintiffs received a discharge in bankruptcy on January 24, 2011. (DSUMF, ¶19).

Plaintiffs submitted their May 1, 2010 payment for the Loan on May 28, 2010. (DSUMF, ¶20). In the Petition, Plaintiffs allege that IndyMac "wrongfully failed to credit Plaintiffs for the May 2010 payment." (Petition, ECF No. 2, ¶23). IndyMac returned the May 2010 payment to Plaintiffs by check number 6030373 because of a pending motion in Plaintiffs'

---

[3] As discussed more herein, Plaintiffs failed to properly respond to IndyMac's statement of facts and, as a result, IndyMac's statements of facts are deemed admitted.

bankruptcy. (DSUMF, ¶21).[4] Check number 6030373 became void, and IndyMac issued a replacement check number 6035831 and returned the May 2010 payment to Plaintiffs on October 18, 2010. (DSUMF, ¶22).[5] Plaintiffs cashed check number 6035831. (DSUMF, ¶23).[6] Plaintiffs did not send funds to IndyMac to make the May 2010 payment after cashing check number 6035831. (DSUMF, ¶24). IndyMac assessed additional fees provided for under the Note and Deed of Trust because Plaintiffs did not make the May 2010 payment. (DSUMF, ¶25). Because Plaintiffs have not resubmitted the May 2010 payment, IndyMac declared Plaintiffs in default on their Loan. (DSUMF, ¶26).

Counsel for Plaintiffs sent a letter, dated November 14, 2012, to IndyMac that disputed the debt related to the Loan. (DSUMF, ¶27). The letter indicated that it was a "qualified written request pursuant to RESPA" and demanded that IndyMac provide "a written payment history from the loan inception to date and an itemization of the alleged deficiency in mortgage payments." (ECF No. 21-13). IndyMac responded in a letter dated December 4, 2012, which provided a payment history for the Loan. (DSUMF, ¶28).

IndyMac reported Plaintiffs' default based upon its belief that the Loan was in default. (DSUMF, ¶31). IndyMac has no record of receiving a notice of a credit dispute from any credit

---

[4] IndyMac incorrectly states in DSUMF, ¶21 that check number 6030373 is attached as Exhibit 1-I. Check number 6030373 can be found at Exhibit 1-J.
[5] IndyMac incorrectly states in DSUMF, ¶22 that check number 6035631 is attached as Exhibit 1-J. First, the correct check number is 6035831, not 6035631. Second, check number 6035831 can be found at Exhibit 1-I, not Exhibit I-J. IndyMac also references an October 18, 2010 letter, attached as Exhibit I-J, but that letter was not included in the record.
[6] Plaintiffs contend that they had no knowledge of what check number 6035831 represented and the check came to them in an envelope with no explanation. (Plaintiff[s] George and Laura Vitela's Statement of Uncontroverted Facts in Support of Its [sic] Opposition to Defendant's Motion for Summary Judgment, ECF No. 33, ¶14). As with many of Plaintiffs' allegedly uncontroverted material facts, paragraph 14 contains no citation to the record or evidence before the Court. Accordingly, the Court cannot consider this "fact" in opposition to Defendant's Motion for Partial Summary Judgment. See E.D.Mo. L.R. 4.01(E).

reporting agency in relation to Plaintiffs' Loan and Plaintiffs have not alleged that they disputed any alleged credit reporting errors with any credit reporting agencies. (DSUMF, ¶¶29-30).

## **SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

# DISCUSSION

## I. IndyMac's Statement of Facts Deemed Admitted and Affidavit of Katherine Ortwerth

Plaintiffs failed to include a statement of material facts as to which they contend a genuine issue exists, as required under E.D.Mo. L.R. 4.01. Although Plaintiffs filed a Statement of Uncontroverted Facts in Support of Its [sic] Opposition to Defendant's Motion for Summary Judgment ("PSUMF"; ECF No. 33), that document failed to satisfy the requirements of E.D.Mo. L.R. 4.01(E). Plaintiffs did not "set forth with specific references to portions of the record, where available, upon which the opposing party relies." E.D.Mo. L.R. 4.01(E). Plaintiffs also did not "note for all disputed facts the paragraph number from movant's listing of facts." (Id.).

Even if the Court were to consider Plaintiffs' Statement of Uncontroverted Material Facts as a response to the Defendant's Motion for Summary Judgment, Plaintiffs fail to properly controvert most of Defendant's Statement of Uncontroverted Material Facts. Plaintiffs do not cite to the record in support of most of their facts. Plaintiffs fail to support paragraphs 1, 14, 15, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26 and 27 of their statement of facts with any evidence. Plaintiffs cannot rest upon the allegations and denials in response to Defendant's Motion for Partial Summary Judgment. See Anderson, 477 U.S. at 258; Gibson v. Am. Greetings Corp., 670 F.3d 844, 853 (8th Cir. 2012) (quoting Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078–79 (8th Cir. 2008)("'a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial'"). Therefore, all matters set forth in Defendant's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment.

5

Further, the Court finds that Plaintiffs' concerns regarding IndyMac's affidavit in support of its Motion for Partial Summary Judgment are unfounded. In their response, Plaintiffs assert that Katherine Ortwerth cannot provide an affidavit in support of IndyMac's motion for summary judgment because she is not an employee of IndyMac. (Plaintiff[s] George and Laura Vitela's Response in Opposition to Motion for Summary Judgment and Memorandum in Support ("Response"), ECF No. 32, at 1).

In support of its Motion for Partial Summary Judgment, IndyMac provides the affidavit of Katherine Ortwerth. IndyMac contends that her affidavit can be considered in support of the Motion for Summary Judgment because it is a business records affidavit under Fed.R.Evid. 803(6).[7] Ms. Ortwerth states in support of her affidavit that "[i]n the regular performance of my job functions, I am familiar with business records maintained by Ocwen Loan Servicing, LLC ('Ocwen') and IndyMac Mortgage Services, a Division of OneWest Bank, FSB ('IndyMac') for

---

[7] Fed.R.Evid. 803(6) provides:

Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

6

the purpose of servicing mortgaging loans." (Ortwerth Affidavit, ECF No. 21-2, ¶4).[8] She further states that Ocwen is "the current loan officer and limited power of attorney for OneWest Bank, FSB." (Id., ¶2). She also contends that she has personally "received the Loan file and Loan history" for Plaintiffs (id., ¶36), and describes the "regular practices of both Ocwen and IndyMac for creating the documents" (id., ¶7).

Plaintiffs do not offer any explanation as to why Ms. Ortwerth should not be allowed to provide the Court with her personal knowledge regarding the practices of IndyMac and the Loan history of Plaintiffs. Plaintiffs do not provide any reason that her affidavit does not provide a sufficient foundation under Fed.R.Evid. 803(6). The Court holds that Ms. Ortwerth's affidavit is based upon sufficient personal knowledge and the Court can consider her affidavit in support of Defendant's Partial Motion for Summary Judgment.

## II.     Counts II, III, and VII

Plaintiffs conceded that IndyMac is entitled to summary judgment with respect to Count II (violation of FCRA), III (violation of the discharge injunction), and VIII (intentional interference with credit expectancy). See Response at 1-2. The Court grants summary judgment in favor of IndyMac on Counts II, III, and VIII.

## III.    FDCPA (Count I)

IndyMac argues that it is entitled summary judgment on Plaintiffs' FDCPA claim in Count I because it was not a "debt collector" within the meaning of the FDCPA. IndyMac claims that it was not a "debt collector" because Plaintiffs were not in default at the time IndyMac became their loan servicer.

---

[8] IndyMac stopped servicing the Loan on August 16, 2013, when servicing was transferred to Ocwen Loan Servicing. (DSUMF, ¶11).

In response, Plaintiffs argue that they were actually in default at the time IndyMac became their loan servicer, as demonstrated by the pay history provided by IndyMac. (Response at 5). Plaintiffs note that, according to the pay history and their affidavits, Plaintiffs did not make the March or April 2009 payments on the first day of the month. (Id.) Plaintiffs also contend that Ms. Ortwerth's affidavit fails to substantiate that IndyMac obtained the servicing rights to Plaintiffs' mortgage loan on March 19, 2009. (Id.) Thus, Plaintiffs argue that an issue of fact exists as to when IndyMac began servicing Plaintiffs' Loan and whether Plaintiffs were in default at the time IndyMac began servicing the Loan. (Id.)

The FDCPA was adopted "to eliminate abusive debt collection practices" by debt collectors. Hemmingsen v. Messerli & Kramer, P.A., 674 F.3d 814, 817 (8th Cir. 2012). The FDCPA defines "debt collector" to exclude "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due to the extent such activity ... (iii) concerns a debt which was not in default at the time it was obtained by such person...." 15 U.S.C. 1692a(6)(F)(iii). "Therefore, mortgage servicing companies are not 'debt collectors' if they obtain the loan for servicing before default." Stricklin v. Litton Loan Servicing, L.P., 4:13-CV-1354 CEJ, 2014 WL 1315961, at *1 (E.D. Mo. Apr. 2, 2014)(citing Glazer v. Chase Home Fin., LLC, 704 F.3d 453, 475 (6th Cir.2013); Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir.1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."); Barnes v. Citigroup, Inc., No. 4:10–cv–620 (JCH), 2010 WL 2557508, at *3 (E.D. Mo. June 15, 2008)(same)).

Based upon the record, the Court holds that IndyMac is entitled to summary judgment on Count I. IndyMac provides sufficient evidence that Plaintiffs were not in default at the time that

8

IndyMac took over servicing Plaintiffs' Loan. First, IndyMac stated in its Statement of Uncontroverted Material Facts that IndyMac began servicing the Loan on March 19, 2009 (DSUMF, ¶9) and that the Loan was not in default and the payments under the Note were current as of March 9, 2009. (DSUMF, ¶10). As discussed above, Plaintiffs did not properly controvert these facts pursuant to E.D. Mo. L.R. 4.01(E) and, therefore, they are deemed admitted for purposes of summary judgment.[9]

In any event, the Court finds that Plaintiffs have failed to create an issue of material fact that precludes summary judgment. Plaintiffs state they did not make their March 2009 payment on March 1, 2009 and they did not make their April 2009 payment on April 1, 2009 and, therefore, they must have been in default on March 19, 2009 when IndyMac took over servicing on the loan. Although Plaintiffs did not make their March 2009 payment on March 1, 2009, they had the entire month of March to cure this default. (ECF No. 34 at 3). The evidence before the Court indicates that Plaintiffs made their monthly payment of $1,451.03 on March 9, 2009. See Exhibit 1-L, ECF No. 21-14 at 17-18. Thus, the evidence before the Court demonstrates that Plaintiffs cured their default and were not in default as of the time that IndyMac took over as the servicer of Plaintiffs' Loan. For this reason, the Court finds that IndyMac was not a "debt collector" with respect to Plaintiffs under the FDCPA and the Court enters summary judgment in favor of IndyMac on Count I.

## IV.   RESPA (Count IV)[10]

---

[9] Likewise, the Court can consider the affidavit of Ms. Ortwerth in support of when IndyMac became the servicer of Plaintiffs' Loan.

[10] In its Memorandum in Support of its Motion for Summary Judgment, IndyMac presented arguments under both RESPA and TILA because it was unclear as what statute Plaintiffs' claim in Count IV was brought under. (ECF No. 21 at 6-9); see Petition, ¶71 (noting that IndyMac is required to give the TILA notices "to Plaintiffs on an ongoing basis") In their Response, Plaintiffs stated that IndyMac "did violate RESPA and TILA" but only presented argument that IndyMac did not properly reply to Plaintiffs' qualified written request under RESPA. (Response

IndyMac contends that Plaintiffs' RESPA claim fails because it properly responded to Plaintiffs' purported "qualified written request." Under RESPA, a qualified written request is:

> [W]ritten correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). Under RESPA, following the receipt of a qualified written request, a loan servicer shall "after conducting an investigation, provide the borrower with a written explanation or clarification that includes (i) information requested by the borrower …; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." 12 U.S.C.A. § 2605(e)(2)(C).

Plaintiffs' attorney submitted a purported qualified written request that demanded that IndyMac "immediately validate the debt alleged to be owed to my clients, provided [sic] a written payment history from the loan inception to date and an itemization of the alleged deficiency in mortgage payments." (DSUMF, ¶27; ECF No. 21-13, Exhibit 1-K). In response, IndyMac informed Plaintiffs' counsel that its "investigation revealed the account is due for the August 1, 2012, payment. There is a past due balance of $6,720.83 including payments and late charges. As the loan was referred to foreclosure on November 21, 2012, foreclosure fees and costs have been requested." (DSUMF, ¶28; Exhibit 1-L). IndyMac also provided counsel with a "transaction history from the origination of the loan to current." (Exhibit 1-L). Finally, IndyMac gave counsel a phone number for its Customer Service Department (for reinstatement figures or

---

at 5-6). Plaintiffs "concede[] that any claims under [the] Truth in Lending Act is insufficiently pled." (Response at 1-2). As a result, IndyMac only addressed the RESPA claim in the reply (ECF No. 34 at 4-5), and the Court does the same.

"additional questions") and a phone number and address for the Cashiering Department (for payments that had not been credited). (Exhibit 1-L). Thus, IndyMac asserts that it complied with its RESPA obligations by providing Plaintiffs with both a post-investigation "explanation or clarification" in a letter and by providing Plaintiffs' loan payment history, as well as contact information to follow up with IndyMac's Customer Service Department. See ECF No. 21 at 8 (citing 12 U.S.C. §2605(e)(2)(C)).

In response, Plaintiffs contend that IndyMac's responses to its qualified written request were insufficient because the responses failed to provide Plaintiffs with an "itemization of the alleged deficiency in mortgage payments." (Response at 5-6). Plaintiffs, however, "do not dispute receiving a pay history from Defendant[]." (Response at 6). Plaintiffs instead complain that IndyMac failed to timely provide Plaintiffs with "an explanation as to where Plaintiffs['] default originated." (Response at 6). Plaintiffs seem to argue that IndyMac did not comply with 12 U.S.C. § 2605(e)(2)(5)(i). See Response at 6 (citing 12 U.S.C. § 2605(e)(2)(5)(i)("RESPA requires, in relevant part, that "[n]ot later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request … and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall after conducting an investigation, provide the borrower with a written explanation or clarification that includes information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer[.]").

To make out a claim under § 2605(e), a plaintiff must allege sufficient facts to "show: (1) that the servicer failed to comply with the statute's [qualified written request] rules; and (2) that the plaintiff incurred 'actual damages' as a consequence of the servicer's failure." Jones v. Bank of New York, CIV.A. 12–11503–RWZ, 2013 WL 3728382, at *5 (D.Mass. July 12, 2013) (citing

Okoye v. Bank of New York Mellon, CIV. A. No. 10–11563–DPW, 2011 WL 3269686, at *17 (D.Mass. July 28, 2011)); O'Connor v. Nantucket Bank, CIV. 13-11350-PBS, 2014 WL 198347, at *8 (D. Mass. Jan. 16, 2014). Based upon the undisputed facts, the Court finds no evidence of a RESPA violation by IndyMac. IndyMac provided Plaintiffs with a copy of their Loan history that detailed all of the payments that they made on their account. (Exhibit 1-L; ECF No. 21-14). The payment history showed the way each payment was applied to principal, interest, and escrow and indicated any late charges accrued. See O'Connor, 2014 WL 198347, at *10 (bank complied with its requirements under RESPA where it provided a loan history, contact person at the bank, and a copy of the note and mortgage); see also Kassner v. Chase Home Fin., LLC, CIV.A. 11-10643-RWZ, 2012 WL 260392, at *6 (D. Mass. Jan. 27, 2012)(bank's response was insufficient where it provided a copy of the executed note, ARM Mortgage Loan Disclosure Statement, Notice of the Right to Cancel statement, Truth in Lending Disclosure Statement and HUD 1–Settlement Statement, but failed to provide loan's payment history and the contact information for an individual employed by the servicer who could provide further assistance to the plaintiff). If Plaintiffs were unable to interpret this document or were otherwise confused, then they could have contacted the customer service representative identified by IndyMac. Plaintiffs have failed to point to any specific item that IndyMac did not provide that was required by RESPA. Nor do Plaintiffs explain how the pay history from IndyMac did not constitute an "itemization of the alleged deficiency in mortgage payments." Because Plaintiffs have not identified any deficiencies under RESPA to IndyMac's response, the Court holds that IndyMac properly responded to Plaintiffs' qualified written request and fulfilled their statutory obligations. The Court grants summary judgment in favor of IndyMac on Count IV.

## V. MMPA (Count V)

In arguing the MMPA claim, the parties dispute whether IndyMac's post-sale actions in foreclosing on the property were "in connection with" the sale or advertisement of any merchandise…" as required under the MMPA. See R.S. Mo. 407.020.1. In their Response, Plaintiffs note that this issue was argued before the Missouri Supreme Court on April 2, 2014 in Shelby Watson v. Wellsfargo Home Mortgage, Inc. et al., SC93769, and Davis R. Conway and Sheri D. Conway v. Citimortgage, Inc. and National Federal Mortgage Association, Inc., SC93951. Plaintiffs ask this Court to hold ruling in this matter until such time as the Supreme Court of the State of Missouri can decide these cases.

The Court finds that the law in this area is unsettled based upon the recent transfer of the Watson and Conway cases and their argument before the Supreme Court of Missouri. The interpretation of the MMPA should be resolved once the Supreme Court of Missouri has had an opportunity to rule on Watson and Conway. The Court further notes that it has only supplemental jurisdiction over the MMPA claim. See 28 U.S.C. §1967. Because this Court grants summary judgment on the federal claims in this case, the Court remands the MMPA claim in Count V (along with the unjust enrichment claim in Count VI and the breach of contract claim in Count VII) to be decided by the Circuit Court of St. Louis County, Missouri.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant IndyMac Mortgage Services, a Division of OneWest Bank, FSB's Motion for Partial Summary Judgment [20] is **GRANTED**, in part. The Court grants Defendant IndyMac Mortgage Services, A Division of OneWest Bank, FSB's Motion for Partial Summary Judgment [20] as to Counts I, II, III, IV, and VII. An appropriate Judgment shall accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiffs' claims for violation of the MMPA in Count V, unjust enrichment claim in Count VI, and the breach of contract claim in Count VII are **REMANDED** to the Circuit Court of the County of St. Louis, Missouri. A partial order of remand is file herewith.

Dated this 24th day of June, 2014.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE